```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              :    CIVIL ACTION
    AZUNA, LLC, et al.,       :    NO. 08-776
                              :
         Plaintiffs,          :
                              :
    v.                        :
                              :
    NETPIA.COM, INC., et al., :
                              :
         Defendants.          :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        OCTOBER 30, 2008

Defendants Netpia.com, Inc. ("Netpia") and Netpia International Corporation ("Netpia International") file this motion to dismiss under Fed. R. Civ. P. 12(b)(3) and 12(b)(6). (Doc. no. 4.) For the reasons that follow, the motion to dismiss (doc. no. 4) will be granted.

I. BACKGROUND

   A. Facts[1]

Plaintiffs Azuna, LLC ("Azuna") and DAK International, LLC ("DAK") are limited liability companies organized under Pennsylvania law and located in Jenkintown, Pennsylvania (collectively referred to as "Plaintiffs"). Netpia is a Korean

---

[1] The facts presented are drawn from Plaintiffs' complaint and when disputed are viewed in the light most favorable to Plaintiffs.

-1-

corporation with its principal place of business in Seoul, Korea and Netpia International is the international arm of Netpia (collectively referred to as "Defendants").  Netpia International maintains a United States office in San Jose, California.

In mid to late February in 2005, Plaintiffs approached Defendants in Korea to express an interest in learning more about their Native Language Internet Address ("NLIA") technology, and possibly brokering a deal to market NLIA to the United States, Canada, and Mexico.  NLIA was represented as a domain name system, whereby a user can type a url into an internet address bar in one of any 95 languages and still be routed to the intended website.  For example, a user in China would have the ability to type "www.samsung.com," in Chinese, and still be routed to the Samsung website.  Currently, only the English language characters are recognized by internet browsers.

In March, June, and August of 2005, Plaintiffs hired three internet consultants to research Defendants' technology and determine its legitimacy: Brian Casey of DCA, Bob Saltzman of VM Ware, and Clair Roberts.  All three internet specialists indicated that the technology was legitimate and worked as Defendants claimed.  Plaintiffs also consulted a Korean company, K Word, to obtain background information about NLIA.  In addition, Plaintiff witnessed demonstrations of NLIA over a period of several months.  According to Plaintiffs, Defendants'

technology appeared legitimate.

Between May and October 2005, Plaintiffs asked Defendants questions pertaining to potential problems such as general legal issues, patent infringement, patent applications, and prior art. Defendants reassured Plaintiffs that none of these issues would present a problem in the future.

On March 18, 2005, Sacks, Weston, Smolinksy, Albert & Luber ("SWS"),[2] and Netpia entered into a confidentiality agreement to facilitate negotiations between Plaintiffs and Defendants. On April 5, 2008, SWS and Netpia entered into a Memorandum of Understanding memorializing their intent to enter into a more definitive agreement for the implementation and promotion of NLIA in the United States, Canada, and Mexico. On May 24, 2005, Azuna was formed for the purpose of entering into a more definitive agreement with Netpia.

On May 25, 2005, Netpia and Azuna entered into an Implementation Agreement (the "Agreement"). The original termination date of the Agreement was August 25, 2005, but the parties extended the duration of the Agreement by thirty days on August 24, 2005. The Agreement was an affirmative action by the parties to move forward with their negotiated plans relating to NLIA "without further delay." Pls.' Compl. Ex. C, Preamble.

---

[2] Although the facts are unclear, it appears that Andrew B. Sacks ("Sacks") of SWS, and now CEO of Azuna, incorporated Azuna and may have served as the promoter.

The Agreement contemplated the execution of a Local Operator and License Agreement ("LOLA"), which would govern the terms of the NLIA license and the relationship between Netpia and Azuna.  Id. ¶ 3.  A LOLA would have given Azuna exclusive rights to NLIA for twenty years in the United States, Canada, and Mexico.  In exchange, Azuna would have paid Netpia a license fee and royalties on revenues generated by NLIA.  In addition, the Agreement authorized the parties to "market the services and products to be offered by [Azuna], as well as engage in other reasonable activities to promote the planned business of [Azuna]."  Id. ¶ 4.

The Agreement contained three provisions that are relevant in the instant case.  First, any disputes initiated by Azuna that relate to or arise out of the Agreement are subject to arbitration before the Korea Commercial Arbitration Board.  Pls.' Compl. Ex. C, ¶ 8.  Second, the Agreement is to be governed by and interpreted under Pennsylvania law.  Id.  Third, the Agreement has an integration clause that states: "This Agreement constitutes the full agreement of the parties . . . and shall supersede all previous representations, understanding[s] or agreements, oral or written, among the [p]arties . . . ."  Id. ¶ 9.

While the Agreement was in effect, Plaintiffs began preparing for the introduction of NLIA by creating business and

marketing plans, and assembling employee and political contacts. Plaintiffs spent $135,486.80 in this effort. On September 7, 2005, the CEO of Netpia, B.H. Lee ("Lee"), and four other Netpia employees met with Sacks. Lee expressed an undeniable interest in moving forward and continuing Netpia's business relationship with Plaintiffs. According to Plaintiffs, Lee said, "We are going to do the deal. We want to do the whole world with you guys."

The Agreement expired on September 24, 2005 because the parties failed to enter into a LOLA. Plaintiffs allege that this failure was the direct result of Defendants refusal to be held fully responsible and liable for any and all lawsuits, and/or challenges to their patent, and/or challenges to NLIA technology. On September 30, 2005, Lee informed Sacks that Defendants no longer wished to pursue the endeavor.

On November 2, 2005, Plaintiffs again met with K Word in Korea. They then learned that NLIA was not a true domain name system and that it did not work as Defendants claimed. Plaintiffs were under the impression that NLIA worked equally well with any internet browser (i.e., Microsoft Internet Explorer, AOL, Netscape, Firefox, among others), as would be the case if NLIA was a true domain name system. However, NLIA only works on Microsoft Internet Explorer because the technology relies on error messages generated from Microsoft's error center.

Those error messages are then re-routed, thereby directing internet users to the intended website.  NLIA would only work so long as Microsoft continues to issue a particular type of error message.

B. Procedural History

On November 1, 2007, Plaintiffs filed their complaint against Defendants in the Court of Common Pleas of Philadelphia County, Pennsylvania, alleging one count of fraud in the inducement.  Plaintiffs assert that Defendants materially misrepresented the function of NLIA or failed to disclose material facts related to NLIA by leading Plaintiffs to believe that NLIA worked on all internet browsers when, in reality, it does not.  Plaintiffs claim that they relied on these misrepresentations or omissions when deciding whether or not to enter into the Agreement.

On February 19, 2008, Defendants removed the case under 28 U.S.C. § 1441 et seq. stating that the Court has original jurisdiction over the instant case under 28 U.S.C. § 1332(a).[3]

---

[3] Title 28 of United States Code Section 1332 grants district courts original jurisdiction over civil suits where the matter in controversy exceeds $75,000.00 and the parties are "citizens of a State and citizens or subjects of a foreign state." Id. at § 1332(a)(2).  Here, Plaintiffs are limited liability companies incorporated and existing under the laws of Pennsylvania, Netpia is a corporation incorporated and existing under the laws of Korea, and Netpia International is a corporation incorporated and existing under the laws of

(Doc. no. 1.)  On March 3, 2008, Defendants filed the instant motion to dismiss asserting improper venue under 12(b)(3) and failure to state a claim upon which relief can be granted under 12(b)(6).  Following Plaintiffs' answer, Defendants filed a series of motions for leave to file reply briefs in support of their motion to dismiss.  (Doc. nos. 11, 14, 16.)[4]

II.  DISCUSSION

    A.   <u>Motion to Dismiss under 12(b)(6) rather than 12(b)(3)</u>[5]

Defendants filed the instant motion to dismiss under 12(b)(3) on the grounds that the proper venue for Plaintiffs' claim is the Korea Commercial Arbitration Board.  A challenge for lack of venue based upon a forum selection clause that designates a non-federal forum may be appropriately brought as a motion to dismiss for failure to state a claim under 12(b)(6).  <u>See</u>

---

California.  The amount in controversy is at least $135,486.80.  Under these circumstances, the Court finds that diversity jurisdiction under § 1332 is proper.

    [4]   The Court grants Defendants' motion to file a reply brief (doc. no. 11), and has taken the brief attached thereto under consideration in issuing the instant opinion.  The Court denies Defendants' motions to file reply briefs (doc. nos. 14, 16), and has not taken the briefs or documents attached thereto under consideration in issuing the instant opinion.

    [5]   The Court has not converted these motions to dismiss into motions for summary judgment, nor has it considered any documents outside of the pleadings.  Indeed, the only documents considered by the Court were those attached to Plaintiffs' complaint.

Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 298 (3d Cir. 2001).[6]  Therefore, the Court will analyze Defendants' motion under 12(b)(6) rather than 12(b)(3).  Plaintiffs bear the burden of demonstrating why they should not be bound to the agreed upon choice of forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995) (citing Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972) (assuming the absence of "fraud, influence, or overweening bargaining power")).

    B.    The Arbitration Agreement

        1.    Applicable law

---

[6] The Third Circuit has not addressed the issue directly and the answer is not free from doubt.  In Salovaara v. Jackson Nat. Life Ins. Co., the Third Circuit reviewed the district court's treatment of a motion to dismiss under 12(b)(6) based on a forum selection clause in an indemnification agreement rather than under 12(b)(3).  246 F.3d 289, 297 (3d Cir. 2001).  The Third Circuit noted that there is a disagreement over whether dismissal under such circumstances warrants review under 12(b)(1), 12(b)(3), or 12(b)(6).  Id. at 298 n.6 (citing Lambert v. Kysar, 983 F.2d 1110, 1112 n.1 (1st Cir. 1993) (dismissing under 12(b)(6), not 12(b)(3)); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289 (11th Cir. 1998) (complying cases to demonstrate the disagreement in the context of forum selection clauses that designate non-federal forums)).  The Third Circuit recognized that transfer under 28 U.S.C. § 1404(a) rather than dismissal would be appropriate when a forum selection clause designates another federal venue.  Id. at 299.  Nevertheless, the court noted, "when a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of § 1404."  Id.; see also Instrumentation Assocs., Inc. v. Madsen Electronics (Canada) Ltd., 859 F.2d 4,7 n.4 (3d Cir. 1988) (finding § 1404(a) does not apply when a forum selection clause calls for a non-federal forum).  For purposes of deciding this motion, whether the case is analyzed under 12(b)(6) or 12(b)(3) is not outcome determinative.

Generally, the FAA governs the construction and enforcement of an arbitration agreement if the agreement is connected to a transaction involving interstate commerce. State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000) (citing PaineWebber Inc. v. Hartmann, 921 F.2d 507, 510 (3d Cir. 1990)). Parties may avoid the application of the FAA by specifying in the agreement that it is governed by a particular state's law. Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 288 (3d Cir. 2001); but cf. Hall St. Assocs., L.L.C. v. Mattel, Inc., 128 S.Ct. 1396, 1403 (2008) (holding Sections 10 and 11 of the FAA are the exclusive grounds for expedited vacatur and modification).

Here, the Court will apply Pennsylvania law because the contract adopts Pennsylvania law and the parties do not dispute that Pennsylvania law applies. Under Pennsylvania law, when a court is asked to enforce an arbitration clause, "judicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision." Fastuca v. L.W. Molnar & Assocs., 950 A.2d 980, 989 (Pa. Super. Ct. 2008) (quoting Flightways Corp. v. Keystone Helicopter Corp., 331 A.2d 184, 185 (Pa. 1975)). The first question in this case then is whether the claim that Plaintiffs were fraudulently induced by Defendants to enter into the Agreement falls within the scope of

the arbitration clause.

This inquiry is complicated by the fact that the Agreement expired before Plaintiff brought the instant action. As a result, the second question is whether the arbitration clause survived the expiration of the Agreement. See Litton Bus. Sys., Inc. v. Nat'l Labor Relations Bd., 501 U.S. 190, 207-08 (1991) (establishing test to determine whether an agreement to arbitrate survives after expiration of the contract).[7] The Court will address the two questions ad seriatim.

---

[7] Although the Litton factors have not been applied by a Pennsylvania state court and Litton concerned an arbitration clause in a collective bargaining agreement, the federal rule relating to the survival of arbitration clauses after the expiration of the underlying agreement is equally applicable under Pennsylvania law. Lytle v. CitiFinanical Servs., Inc., 810 A.2d 643, 656 (Pa. Super. Ct. 2002) (reasoning that "Pennsylvania law on the enforceability of agreements to arbitration is in accord with federal law" and "rendering the FAA controlling upon the issue"), abrogated on other grounds by Salley v. Option One Mortgage Corp., 925 A.2d 115, 129 (Pa. 2007); see also Joseph v. Advest, Inc., 906 A.2d 1205, 1209 (Pa. Super. Ct. 2006) (recognizing the applicability of FAA "both in the federal and state arena for purposes of determining the enforceability of an arbitration agreement that might otherwise be invalid under state law.").

Moreover, Litton has been applied by other state courts under similar circumstances. See, e.g., Rockwood Automatic Mach., Inc. v. Lear Corp., 831 N.Y.S.2d 349 (N.Y. Sup. Ct. 2006); Ajida Tech., Inc. v. Roos Instruments, Inc., 104 Cal. Rptr. 2d 686 (Cal. Ct. App. 2001). Relatedly, the Litton factors have also been applied in this Court under similar circumstances. See, e.g., Hinnant v. Am. Ingenuity, LLC, 554 F. Supp 2d 576 (E.D. Pa. 2008); Berkery v. Cross Country Bank, 256 F. Supp 2d 359 (E.D. Pa. 2003); Basketball Mktg. Co. v. Urbanworks Entm't, No. 04-3179, 2004 WL 2590506 (E.D. Pa. Nov. 10, 2004); Selas Fluid Processing Corp. v. Ultra-Cast, Inc., No. 04-3179, 2004 WL 1622034 (E.D. Pa. July 20, 2004).

        2.    Whether the claim of fraudulent inducement falls under the scope of the arbitration clause

Defendants argue that the instant case should be dismissed because any disputes initiated by Azuna that relate to or arise out of the Agreement are subject to arbitration before the Korea Commercial Arbitration Board.  See generally Koken v. Reliance Ins. Co., 846 A.2d 778, 781 (Pa. Commw. Ct. 2004) (finding it is "well-settled law that contracts providing for arbitration are valid, enforceable, and irrevocable, save upon grounds as exist in law or in equity for the revocation of any other type of contract") (citing Borough of Ambridge Water Auth. v. J.Z. Columbia, 328 A.2d 498 (1974)).  Plaintiffs counter, however, that the agreement to arbitrate is invalid because the contract itself is void due to fraud in the inducement. Plaintiffs' argument lacks legal merit.

      The law in Pennsylvania is consistent with the United States Supreme Court's analysis in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967).  "'[A] general attack on a contract for fraud is to be decided under the applicable arbitration provision as a severable part of the contract and that only where the claim of fraud in the inducement goes specifically to the arbitration provision itself should it be adjudicated by the court rather than the arbitrator.'" Flightways, 331 A.2d at 186 (quoting Merritt-Chapman & Scott Corp. v. Pa. Turnpike Comm'n, 387 F.2d 768, 771 (3d Cir. 1967));

see also Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 196-97 (Pa. Super. Ct. 2002) (citing Flightways, 331 A.2d at 185). The arbitration provision "cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement or mutual mistake." Flightways, 331 A.2d at 185; see also Ross Dev., 803 A.2d at 196-97 (citing Flightways, 331 A.2d at 185).

Here, Plaintiffs do not allege that they were fraudulently induced to enter into the arbitration provision specifically, but simply induced to enter the contract generally. Therefore, the Court finds the claim that Netpia fraudulently induced Azuna to enter into the Agreement falls within the scope of the arbitration agreement. This claim is to be presented to the Korea Commercial Arbitration Board for determination and not to this Court.

> 3. <u>Whether the agreement to arbitration survived the expiration of the Agreement</u>

The Agreement in this case expired on September 24, 2005. On September 30, 2005, Azuna was informed that Netpia no longer wished to pursue the endeavor. Plaintiffs then instituted the instant action against Defendants on November 1, 2007.

Where a contract containing an agreement to arbitrate has expired, the Court must determine whether the agreement to arbitrate survived the expiration of the contract:

> [C]ontractual obligations will cease, in the ordinary
> course, upon termination of the [contract]. Exceptions
> are determined by contract interpretation. . . .
> [S]tructural provisions relating to remedies and
> dispute resolution--for example, an arbitration
> provision--may in some cases survive in order to
> enforce duties <u>arising under</u> the contract.

<u>Litton</u>, 501 U.S. at 207-08 (emphasis added). In <u>Litton</u>, the Court elaborated that a post-expiration claim may "arise under the contract" only if:

> it involves facts and occurrences that arose before
> expiration, where an action taken after expiration
> infringes a right that accrued or vested under the
> agreement, or where, under normal principles of
> contract interpretation, the disputed contractual right
> survives expiration of the remainder of the agreement.

<u>Id.</u> at 206.

Because Plaintiffs brought their claim after the expiry of the Agreement, the arbitration clause survives only where: (1) Plaintiffs' claims involve facts and occurrences that arose before expiration; or (2) Defendants' action taken after expiration infringes a right that accrued or vested under the Agreement. <u>Litton</u>, 501 U.S. at 206.

Here, the purpose of the Agreement was to commence marketing and promotion of NLIA in the United States, Canada, and Mexico. The express intent was for the parties to enter into a LOLA. The Plaintiff's stance, however, is that the Agreement was fraudulently induced. First, it is only logical that in order to have fraudulently induced Plaintiffs to enter into the Agreement, Defendants' conduct must have occurred before its execution, let

-13-

alone before its expiration.  Second, Netpia's alleged failure to enter into a LOLA constituted a breach of an express obligation under the Agreement that occurred before its expiration.  Under <u>Litton</u>, the Court finds that the arbitration clause survives the expiration of the Agreement.

III. CONCLUSION

          For the reasons set forth above, the motion to dismiss (doc. no. 4) is granted.  An appropriate order follows.

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                                    :    CIVIL ACTION
    AZUNA, LLC, et al.,              :    NO. 08-776
                                    :
         Plaintiffs,                 :
                                    :
    v.                              :
                                    :
    NETPIA.COM, INC., et al.,       :
                                    :
         Defendants.                 :
```

## **O R D E R**

**AND NOW**, this **30th day of October 2008**, it is hereby **ORDERED**, for the reasons stated in the accompanying memorandum, as follows:

1. Defendants' motion to dismiss (doc. no. 4) is **GRANTED**;

2. Defendants' motion for leave to file a reply brief (doc. no. 11) is **GRANTED**;

3. Defendants' motions for leave to file reply briefs (doc. nos. 14, 16) are **DENIED**.

**AND IT IS SO ORDERED.**

                                    S/Eduardo C. Robreno
                                    **EDUARDO C. ROBRENO, J.**