IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AZUNA, LLC, et al., | : | CIVIL ACTION |
|  | : | NO. 08-776 |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| NETPIA.COM, INC., et al., | : |  |
|  | : |  |
| Defendants. | : |  |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    AUGUST 12, 2009

        Plaintiffs Azuna, LLC ("Azuna") and DAK International,
LLC ("DAK," collectively referred to as "Plaintiffs") file this
motion for reconsideration under Fed. R. Civ. P. 60.  (doc. no.
20.)  For the reasons that follow, the motion for reconsideration
(doc. no. 20) of the Court's Order dated October 30, 2008 will be
granted in part to the extent the Court dismissed Plaintiff DAK's
claim and denied in part to the extent it seeks reconsideration
of the Court's dismissal of Plaintiff Azuna's claim.


I. BACKGROUND

    A. Facts[1]

        Plaintiffs Azuna and DAK are limited liability

_____

        [1]    A thorough recitation of the underlying facts may be
found in the Court's Order dated October 30, 2008.  See Azuna v.
Netpia.com, Inc., 2008 WL 4787589 (E.D. Pa. Oct. 30, 2008).

-1-

companies organized under Pennsylvania law and located in
Jenkintown, Pennsylvania.   Netpia.com, Inc. ("Netpia") is a
Korean corporation with its principal place of business in Seoul,
Korea and Netpia International Corporation ("Netpia
International") is the international arm of Netpia (collectively
referred to as "Defendants").

Plaintiffs initiated the instant action against
Defendants in the Court of Common Pleas of Philadelphia County,
Pennsylvania on November 1, 2007.[2]  Plaintiffs allege one count
of fraud in the inducement.  Specifically, Plaintiffs claim that
Defendants materially misrepresented the function of their Native
Language Internet Address ("NLIA") technology or failed to
disclose material facts related to NLIA by leading Plaintiffs to
believe that NLIA worked on all internet browsers when, in
reality, it does not.  Plaintiffs claim that they relied on these
misrepresentations or omissions when deciding whether or not to
enter into the Implementation Agreement dated May 25, 2005 (the
"Agreement").

B.   Procedural History

On October 30, 2008, the Court granted Defendants'
motion to dismiss asserting improper venue under Federal Rule of

---

[2]   The case was removed to this Court on February
19, 2008.

Civil Procedure 12(b)(3) and failure to state a claim under
Federal Rule of Civil Procedure 12(b)(6).  The Court found "the
claim that Netpia fraudulently induced Azuna to enter into the
Agreement falls within the scope of the arbitration agreement.
This claim is to be presented to the Korea Commercial Arbitration
Board for determination and not to this Court."  <u>Azuna v.
Netpia.com, Inc.</u>, 2008 WL 4787589, *4 (E.D. Pa. Oct. 30, 2008).


II.  MOTION FOR RECONSIDERATION

        On November 18, 2008, Plaintiffs filed the instant
motion for reconsideration under Federal Rule of Civil Procedure
60, challenging the Court's Memorandum and Order dated October
30, 2008.  Plaintiffs argue the following: (1) the Court
disregarded DAK's fraud in the inducement claim; and (2) the
Court overlooked the language of the Implementation Agreement
limiting the scope of its arbitration clause to govern only the
limited matters discussed within the four corners of the
document.  Oral argument on Plaintiff's motion for
reconsideration was held on June 26, 2009.  Following oral
argument, the Court ordered further briefing on whether DAK is
bound by the arbitration agreement.


    A.  <u>Legal Standard</u>

        A district court has the authority to correct a mistake

-3-

in a judgment or order "arising from oversight or omission" under Federal Rule of Civil Procedure 60(a).  Parties are also afforded relief from a final judgment or order under Federal Rule of Civil Procedure 60(b)(1) in the event of "mistake, inadvertence, surprise, or excusable neglect."

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." Harsco Co. V. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Reconsideration is appropriate where the party seeking  reconsideration establishes "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [issued its previous decision]; or (3) the need to correct a clear error of law or fact or prevent manifest injustice." Max's Seafood Cafe ex rel. Lou Ann v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

### 1. DAK's fraud in the inducement claim[3]

Here, the Court's Memorandum and Order dated October 30, 2008 did not address DAK's fraud in the inducement claim, nor

---

[3]     In the alternative, Defendant argues that DAK lacks standing because it was not a party to the Agreement.  The Court need not address this issue at this time because the question at hand involves whether DAK is bound by the arbitration agreement. If DAK is bound it will be ordered to arbitrate the matter.  If not, the case will be severed and stayed pending resolution of Plaintiff Azuna's arbitration in Korea.  The Court will consider whether DAK lacks standing if the issue is properly raised at the appropriate time.

did it consider whether DAK lacked standing, nor did it analyze whether DAK, a non-signatory to the Implementation Agreement, can nevertheless be bound by the arbitration agreement.  These arguments were raised by Defendants in their initial pleadings. To the extent the Court will consider these matters now, Defendants argue that DAK is bound by the arbitration agreement under an agency and/or an estoppel theory.

> a.   Whether DAK is bound by the arbitration
>      agreement

Courts generally lack the authority to enforce an arbitration agreement against non-signatories.  CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 137 (3d Cir. 2004); Dodds v. Pulte Home Corp., 909 A.2d 348, 352 (Pa. Super. Ct. 2006).  It is true, however, that under Pennsylvania law, "non-signatories to a contract, such as third-party beneficiaries, may fall within the scope of an arbitration clause if that is the signing parties' intent."  Dodds, 909 A.2d at 351 (citing Smay v. E.R. Stuebner, Inc., 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004)); see also Smith v. Cumberland Group, Ltd., 687 A.2d 1167, 1171 (Pa. 1997) (finding (generally) enforceability of arbitration agreement is limited to signatories).  In some cases, common law principles of contract and agency law may bind non-signatories to an arbitration agreement.  See, e.g., Allstate Settlement Corp. v. Rapid Settlements, Ltd., 559 F.3d 164, 170

(3d Cir. 2009) (recognizing "five theories for binding non[-]signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego[;] and estoppel."); <u>Trippe Mfg. Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005); <u>Bel-Ray Co. v. Chemrite (PTY), Ltd.</u>, 181 F.3d 435, 444 (3d Cir. 1999);  Marciano v. MONY Life Ins. Co., 470 F. Supp. 2d 518, 525 n.11 (E.D. Pa. 2007); <u>Amkor Tech., Inc. v. Alcatel Bus. Sys.</u>, 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003).

### i.   <u>Agency theory</u>

Defendants allege that DAK is bound by the arbitration agreement because it is an agent of Azuna.  Defendants aver that DAK and Azuna share the same ownership, counsel, and headquarters.  (Pl.'s Compl. ¶¶ 1-2, doc. no. 1.)  The Defendants argue that Plaintiffs joint efforts in reliance upon the Implementation Agreement, and their closely related identities and interests is sufficient to demonstrate an agency relationship thereby binding DAK to the arbitration agreement.  Plaintiffs, on the other hand, indicate that DAK and Azuna are separate and distinct entities that were formed at different times. Plaintiffs allege that absent further discovery an agency relationship cannot be established under these facts.  <u>See</u> <u>Milledge v. Chase Bank, USA, N.A.</u>, Civil Action No. 07-4128, 2007

WL 4179847, at *4 (E.D. Pa. Nov. 26, 2007) (finding agency determination necessitated discovery); see also Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 F. App'x 803, 808 (3d Cir. 2003) (not precedential) (citing Canavan v. Beneficial Fin. Corp., 553 F.2d 860, 865 (3d Cir. 1977)).

The Third Circuit recognizes the application of agency principles to bind non-signatories to arbitration agreements. E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001); see, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993) (finding "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements").  When agency is being proved by operation of the parties conduct, agency is a question of fact.  Aldhelm, Inc. V. Schuykill County Tax Claim Bureau, 879 A.2d 400, 406, n. 15 (Pa. Commw. Ct. 2005) (ruling actual notice demonstrated when president signed certified mail receipt); B&L Asphalt Indus., Inc. v. Fusco, 753 A.2d 264, 269 (Pa. Super. Ct. 2000) (finding agency relationship where defendant handled a business's bookkeeping, wrote checks in the business name, prepared tax returns for the business, had full authority to sign checks and administer payroll for the business, and met weekly with the owner to manage the finances of the business).  "The basic

-7-

elements of agency are the manifestation by the principal that
the agent shall act for him, the agent's acceptance of the
undertaking and the understanding of the parties that the
principal is to be in control of the undertaking." Fusco, 753
A.2d at 269 (quoting Lapio v. Robbins, 729 A.2d 1229, 1234 (Pa.
Super. Ct. 1999)).

        Defendants cite Advest, Inc. v. Wagner, in support of
binding DAK to the arbitration agreement under an agency theory.
No. Civ. A. 03-1372, 2005 WL 2456228 (W.D. Pa. 2005).  In Advest,
a financial services corporation (the "financial corporation")
hired a licensed securities representatives group (the
"securities group") to advise clients and enter into
transactions.  Id. at *2.  The securities group were employees
operating under the supervision and control of the financial
corporation.  Id. at *2-*3.  A client of the financial
corporation lost a significant amount of money and filed a civil
action against the securities group seeking rescission of the
underlying transactions.  Id. at *4.  The relationship between
the financial corporation and the client was governed by an
overarching agreement amongst themselves, which included an
arbitration agreement.  Id. at *1-*2.  The securities group was
not a signatory to the agreement; ergo it was not a signatory to
the arbitration agreement.  The arbitration agreement included,
inter alia, the financial corporation and its agents or

-8-

employees.  Id. at *2.  The district court compelled the client to arbitrate his dispute with the securities group because the securities group was either an employee of the financial corporation or an agent based on the financial corporation's control and supervision over the securities group.  Id. at *6.

Here, in this case, Defendants point to common ownership, counsel, and place of business.[4]  However, in the absence of an agreement between DAK and Azuna or evidence that DAK had control or supervision over Azuna, the Court cannot conclude that there is an agency relationship binding DAK to an agreement to arbitrate entered into by Azuna.  Therefore, DAK is not bound by the arbitration agreement under an agency theory.

ii.  Estoppel theory

Defendants also allege that DAK is bound by the arbitration agreement under an estoppel theory.  DAK, and Azuna collectively, "spent large sums of money, to create business and marketing plans, and they assembled contacts to assist in the implementation of Defendants' technology."  (Pls.' Compl. ¶ 40.) Defendants claim that DAK "'embraced' the [Implementation Agreement] in anticipation of receiving the benefits of its

---

[4]      Azuna and DAK share the same address and also share the same address with their attorneys, Sacks & Weston.  Presumably, Sacks and Weston is related to Sacks, Weston, Smolinsky, Albert & Luber, the firm that signed contracts with Netpia.com before Azuna was incorporated.

marketing activities, but now seeks to 'turn its back' on the [Implementation Agreement] by arguing that it did not sign [it]." (Defs.' Supp. Resp., doc. no. 26.)  Accordingly, Defendants argue that DAK should be estopped from disavowing the Implementation Agreement because DAK's claim is based entirely on the provision in the Implementation Agreement permitting the signatories to "market the services and products to be offered via Azuna, LLC, as well as engage in other reasonable activities to promote the planned business of Azuna LLC."  Implementation Agreement ¶ 4.[5]

The Third Circuit recognized the prudence in applying an equitable estoppel theory to bind a non-signatory to an arbitration clause in an appropriate case.  <u>DuPont</u>, 269 F.3d at 199.  Additionally, the Second Circuit has identified two theories: (1) "when the non-signatory knowingly <u>exploits</u> the agreement containing the arbitration clause despite having never signed the agreement"; and (2) "at the non[-]signatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs by the non[-]signatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract

---

[5]      Based on the claim for damages in the complaint, Plaintiffs spent $135,486.80 "to develop a marketing plan for Defendants' technology in the United States."  (Pls.' Compl. ¶ 8.)

obligations.'" Id. (citations omitted) (emphasis added).

In this case, the appropriate analysis is under the first theory (the "exploitation theory"). Under the exploitation theory, "courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." Id. at 200; see, e.g., Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 295-96 (3d Cir. 2004) (holding non-signatory is not bound by arbitration clause when non-signatory was one step removed from the underlying agreement); Am. Bureau of Shipping v. Tecara Shipyard S.PA., 170 F.3d 349, 353 (2d Cir. 1999) (holding non-signatory bound by contract under which it received the direct benefits of lower insurance and the ability to sail under the French flag); Thomson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 779 (2d Cir. 1995) (finding only indirect benefit insufficient to invoke equitable estoppel against a non-signatory).

Here, it is true that DAK embraced the Implementation Agreement as a basis for spending money to promote Defendants technology, yet it did not receive any direct benefit thereunder. Moreover, while Plaintiffs initiated parallel litigation in Korea, at no time, however, did Plaintiffs rely or point to the Implementation Agreement as the basis for their claim. Merely because the claims in the Korean litigation mirror those before

the Court, this alone is insufficient to justify binding DAK to the arbitration agreement under an estoppel theory.  Under these circumstances, DAK is not bound by the arbitration agreement under an estoppel theory.

> b.   Azuna's claim that the Court overlooked the
>      <u>language of the Implementation Agreement</u>

Azuna argues that the Implementation Agreement dealt only with the division of profits, fees, and royalties.  Under this view, the arbitration agreement was limited to disputes relating to or arising from those limited terms.  In particular, Azuna asserts that "[w]hether or not the NLIA technology actually worked, and was legal to operate in the manner offered by Defendants, was not one of the terms covered in the signed agreement."  (Pl.'s Mot. Recons. 6-7 ,doc. no. 20.)

Azuna cites <u>Hazleton Area Sch. Dist. v. Bosak</u>, 671 A.2d 277 (Pa. Commw. Ct. 1996), in support of their position. <u>Hazleton</u>, 671 A.2d 277, 285 (Pellegrini, J., dissenting) (reasoning tort claims related to the agreements and are subject to the arbitration provisions therein); <u>but see</u> <u>Smay</u>, 864 A.2d at 1275-76 (questioning <u>Hazleton</u> as a misconstruction of Pennsylvania Supreme Court precedent);.  In <u>Hazleton</u>, a school district entered into two written agreements with a construction company to build a new highschool.  671 A.2d at 278-79.  Both agreements contained broad arbitration provisions.  <u>Id.</u> at 279.

-12-

The construction was completed by September 1993, and on January 18, 1994 the roof collapsed.  Id.  The school district sought to recover damages under a negligence theory and the defendants filed a petition to compel arbitration under the agreements.  Id.

        The court in Hazleton denied the defendants petition to compel arbitration because the school district's claims sounded in negligence rather than contract.  Id. at 283.  The court reasoned that the school district expected to pay approximately $13 million for the new highschool and that neither of the agreements contemplated paying over $2.5 million to repair a collapsed roof.  Id.  Therefore, the damages sought by Plaintiffs were deemed neither a part of the terms nor a part of the consideration for either agreement.  Id.

        The Hazleton decision is distinguishable.  Hazleton deals with a claim sounding in negligence.  The instant action was brought alleging fraud in the inducement.  The law in Pennsylvania is clear in that arbitration provisions "cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement . . . ."  Flightways Corp. v. Keystone Helicopter Corp., 331 A.2d 184, 185 (Pa. 1975); see also Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 196-97 (Pa. Super. Ct. 2002) (citing Flightways, 331 A.2d at

185).[6]

Here, the Court's Memorandum and Order dated October
30, 2008 properly found that Azuna's claim falls within the scope
of the arbitration agreement.  In addition to providing for the
divisions of profits, fees, and royalties, the Implementation
Agreement also authorized the parties to "market the services and
products to be offered by [Azuna], as well as engage in other
reasonable activities to promote the planned business of
[Azuna]."  (Pl.'s Compl. Ex. C ¶ 4.)  Moreover, the
Implementation Agreement contained an integration clause stating:
"This [Implementation] Agreement constitutes the full agreement
of the parties . . . and shall supersede all previous
representations, understanding[s] or agreements, oral or written,
among the [p]arties . . . ."  Id. ¶ 9.

Azuna's argument for reconsideration lacks merit.
First, Azuna does not point to a change in the applicable law.
Second, the Court was not presented with previously unavailable
evidence.  Third, Azuna fails to establish "the need to correct a

---

[6]      Nevertheless, the reasoning in Hazleton is not the
controlling law in Pennsylvania.  First, the strong dissent in
Hazleton suggests a misapplication of the law.  Hazleton, 671
A.2d 277, 285 (Pellegrini, J., dissenting) (reasoning tort claims
related to the agreements and are subject to the arbitration
provisions therein).  Second, the Pennsylvania Superior Court
indicated that the Commonwealth Court in Hazleton misconstrued
the Pennsylvania Supreme Court decision in Muhlenberg Twp. Sch.
Dist. Auth. v. Pa. Fortunato Constr. Co., 333 A.2d 184 (Pa.
1975); Smay, 864 A.2d at 1275-76.

clear error of law or fact or prevent manifest injustice." Under these circumstances, reconsideration is not appropriate to the extent it relates to the dismissal of Azuna's fraud in the inducement claim.


III. CONCLUSION

For the reasons set forth above, the motion for reconsideration (doc. no. 20) is granted in part and denied in part. An appropriate order follows.